UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| CHIBALE BANDELE, Derivatively on Behalf of Nominal Defendant LUMINAR TECHNOLOGIES, INC.<br><br>Plaintiff,<br><br>v.<br><br>AUSTIN RUSSELL, TOM FENNIMORE, ALEC GORES, MARY LOU JEPSEN, SHAUN MAGUIRE, KATHARINE A. MARTIN, DOMINICK SCHIANO, MATTHEW SIMONCINI, DANIEL TEMPESTA, and JUN HONG HENG,<br><br>Defendants,<br><br>and<br><br>LUMINAR TECHNOLOGIES, INC.,<br><br>Nominal Defendant. | Case No.:<br><br><br>**VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Chibale Bandele ("Plaintiff"), by and through his undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant, Luminar Technologies, Inc. ("Luminar" or the "Company"), against its Board of Directors (the "Board") and certain of its executive officers seeking to remedy Defendants' breaches of fiduciary duties, waste, unjust enrichment, and fraud. Plaintiff's allegations are based upon his personal knowledge as to himself and his

own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information, including filings by Luminar with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record.

## I.     NATURE AND SUMMARY OF THE ACTION

1.     This is a shareholder derivative action brought by Plaintiff on behalf of nominal defendant Luminar Technologies, Inc. against certain current and former officers and directors for breaches of fiduciary duties and violations of law, from March 20, 2025 through May 14, 2025 (the "Relevant Period"). These wrongs resulted in damages to Luminar's goodwill and business reputation. Moreover, the misconduct has exposed the Company to substantial potential liability for violations of state and federal law.

2.     The Company was founded in 2012 by Defendant Russell and specializes in advanced Light Detection and Ranging ("LiDAR") hardware and software solutions for vehicles.

3.     In 2020, Luminar became a public company and began trading on the NASDAQ stock exchange under the ticker symbol "LAZR." Thereafter, Defendant Russell became the Company's CEO and Chairman of the Board.

4.     During the Relevant Period, the Individual Defendants made positive public statements regarding the Company's planned milestones for fiscal year 2025 and anticipated financial results, including increases in revenue.  The Company also touted the importance of Defendant Russell to the success of the Company in its public filings throughout the Relevant Period.

5.     Then, on May 14, 2025, after the market close and following the issues of its 1Q25 Press Release, the Company issued a second press release announcing that Defendant Russell had resigned as President and CEO of the Company and as the Chairman of the Board, "effective immediately, following a Code of Business Conduct and Ethics inquiry by the Audit Committee of the Board of Directors."

6.     The Company's stock was subsequently downgraded the following day, and its price fell $0.80 per share, or 16.80%, to close at $3.96 per share on May 15, 2025.

7.     As a direct result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other shareholders have suffered significant losses and damages.  In addition, the Company is now the subject of a consolidated securities class action filed in this District on behalf of investors who purchased AT&T's shares, *Yskollari v. Luminar Technologies, Inc., et al.*, Case No.  6:25-cv-01384-CEM-NWH (M.D. Fla.) (the

"Securities Class Action"). The Securities Class Action asserts claims against Luminar and Defendants Russell and Fennimore.

## II.    JURISDICTION AND VENUE

8.    This Court has original jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1332. Subject matter jurisdiction is proper because the amount in controversy exceeds $75,000, exclusive of interest and cost, and there is complete diversity of citizenship as the named Plaintiff and each of the Defendants are citizens of different states. This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

9.    This Court has personal jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by the courts of this District permissible under traditional notions of fair play and substantial justice.

10.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because: (i) Luminar is headquartered in this District; (ii) a substantial portion of the transactions and wrongs complained of herein occurred in this jurisdiction; and (iii) the Individual Defendants (defined herein) have received substantial compensation in this District by doing business here and engaging in numerous activities that have had an effect in this District.

## III.    PARTIES

**Plaintiff**

11.    Plaintiff Chibale Bandele owned Luminar stock during the wrongdoing alleged herein, during all times relevant to this complaint, and continues to own Luminar stock.  Plaintiff is a citizen of Texas.

**Nominal Defendant**

12.    Nominal Defendant Luminar is a Delaware corporation with principal executive offices located at 2603 Discovery Drive, Suite 100, Orlando, Florida 32826.  The Company's common stock trades in an efficient market on the NASDAQ under the ticker symbol "LAZR."

**Defendants**

13.    Defendant Austin Russell ("Russell") has served as President, Luminar's Chief Executive Officer, and Chairman of the Company's Board of Directors at all relevant times. He is a named defendant in the Securities Class Action.  Upon information and belief, Defendant Russell is a citizen of Florida.

14.    Defendant Tom Fennimore ("Fennimore") served as Luminar's Chief Financial Officer ("CFO") at all relevant times. He is a named defendant in the Securities Class Action. Upon information and belief, Defendant Lunger is a citizen of California.

15.     Defendant Alec Gores ("Gores") has served as a director of the Company since December 2020.  Upon information and belief, Defendant Gores is a citizen of California.

16.     Defendant Mary Lou Jepsen ("Jepsen") has served as a director of the Company since February 2021.  Jepsen also serves as Chair of the Company's Nominating & ESG Committee ("Nominating Committee") and as a member of its Compensation & Human Capital Management Committee ("Compensation Committee").  Upon information and belief, Defendant Jepsen is a citizen of California.

17.     Defendant Shaun Maguire ("Maguire") has served as a director of the Company since June 2021.  Maguire also serves as a member of the Company's Nominating Committee.  Upon information and belief, Defendant Maguire is a citizen of California.

18.     Defendant Katharine A. Martin ("Martin") has served as a director of the Company since February 2021.  Martin also serves as chair of the Company's Compensation Committee and as a member of the Nominating Committee.  Upon information and belief, Defendant Martin is a citizen of California.

19.     Defendant Dominick Schiano ("Schiano") has served as a director of the Company since November 2024.  Schiano also serves as a member of the

Company's Audit Committee. Upon information and belief, Defendant Schiano is a citizen of Pennsylvania.

20. Defendant Matthew Simoncini ("Simoncini") has served as a director of the Company since December 2020. Simoncini also serves as a member of the Company's Audit Committee and as a member of the Compensation Committee. Upon information and belief, Defendant Simoncini is a citizen of California.

21. Defendant Daniel Tempesta ("Tempesta") has served as a director of the Company since August 2022. Tempesta also serves as chair of the Company's Audit Committee. Upon information and belief, Defendant Tempesta is a citizen of Massachusetts.

22. Defendant Jun Hong Heng ("Heng") served as a director of the Company from June 2021 until his resignation on May 14, 2025. Heng served as a member of the Company's Audit Committee and as a member of the Compensation Committee during the Relevant Period. Upon information and belief, Defendant Heng is a citizen of California.

23. Defendants Russell, Fennimore, Gores, Jepsen, Maguire, Martin, Schiano, Simoncini, Tempesta, and Heng are collectively referred to herein as the "Individual Defendants."

24.    Defendants Russell, Gores, Jepsen, Maguire, Martin, Schiano, Simoncini, and Tempesta are collectively referred to herein as the "Director Defendants."

25.    Defendants Schiano, Simoncini, Tempesta and Heng are referred to herein as the "Audit Committee Defendants."

## IV.    DUTIES OF THE INDIVIDUAL DEFENDANTS

26.    By reason of their positions as officers, directors, and/or fiduciaries of Luminar and because of their ability to control the business and corporate affairs of Luminar, at all relevant times, the Individual Defendants owed Luminar and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were required to use their utmost ability to control and manage Luminar in a fair, just, honest, and equitable manner. The Individual Defendants were required to act in furtherance of the best interests of Luminar and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to Luminar and its shareholders a fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

27.    The Individual Defendants, because of their positions of control and authority as directors and/or officers of Luminar, were able to and did, directly

and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with Luminar, each of the Individual Defendants had knowledge of material non-public information regarding the Company.

28.    To discharge their duties, the officers and directors of Luminar were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of Luminar were required to, among other things:

(a)    Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

(b)    Exercise good faith to ensure that the Company operated in a diligent, honest, and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority;

(c)    Exercise good faith to ensure that the Company's communications with the public and with shareholders are made with due candor in a timely and complete fashion; and

(d)    When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

**Additional Duties of the Audit Committee Defendants**

29.    In addition to the duties discussed above with respect to all of the Individual Defendants, the Audit Committee Defendants owed specific duties to Luminar under the Audit Committee Charter ("Audit Charter").    Among other things, the Audit Charter charges the Audit Committee Defendants with the following authority and responsibilities, among others: to assist the Board in overseeing: (i) the integrity of Luminar's financial statements; (ii) the Company's compliance with legal, regulatory, ethical, and public disclosure requirements; (iii) the performance of Luminar's independent auditor; (iv) Luminar's systems of internal controls; and (v) the auditing, accounting, and financial reporting process generally.

## V.    SUBSTANTIVE ALLEGATIONS

### A.    Background

30.    "Light Detection and Ranging" technology or "LiDAR" is a remote sensing technology that uses laser light to measure distances and create detailed 3D models of the environment. LiDAR has many applications including helping automobiles and their drivers sense and understand surroundings.

31.    Luminar purports to be a technology company specializing in advanced LiDAR hardware and software solutions for vehicles.

32.    The Company was founded in 2012 by Defendant Russell while he was still in high school. Defendant Russell went on to briefly attend Stanford University before winning the prestigious Thiel Fellowship, which allowed him the means to drop out of school and focus on developing Luminar. Over the next few years, Defendant Russell worked in secret to self-engineer and manufacture the Company's LiDAR components.

33.    In 2020, Luminar became a public company and began trading on the NASDAQ stock exchange under the ticker symbol "LAZR." Thereafter, Defendant Russell became the Company's CEO and Chairman of the Board.

34.    Since that time, and throughout the Class Period, Defendant Russell remained the fixture personality and key employee of the Company.

**B.    The Individual Defendants Cause the Company to Issue Materially Misleading Statements**

35.    The Class Period begins on March 20, 2025, when Luminar issued a press release to announce its quarterly business update and financial results for the fourth quarter and full year of 2024 (the "4Q24 Press Release"). The 4Q24 Press Release included the following projected business milestones to be achieved by the end of 2025:

1. Series Production: Ramp series production volume at least 3x year-over-year; Drive economies of scale; Launch additional vehicle models.

2. Next-Generation Technology: Progress on Luminar Halo milestones in customer development contracts for SOP.

3. Business Model: Streamline Luminar's operations with customer transitions to a singular technology platform (Luminar Halo) to drive efficient execution, reduced costs, and accelerated path to profitability.

36.    In connection with the 4Q24 Press Release, Luminar published a slide deck that provided graphic presentations of its Business Update (the "4Q24 Presentation"). The 4Q24 Presentation included a slide providing full year 2025 financial guidance stating, in pertinent part:

> Revenue
> FY'25 Total Revenue Growth of 10% to 20%
> • 3x expected increase in LiDAR shipments for series production
> ***
> • Assumes FY'25 sensor shipments of 30k-33k versus ~9k in FY'24…

37.    On the same day, the Defendants held an investor conference call to discuss Luminar's latest financial results. In his opening remarks, Defendant Russell reiterated guidance for full year 2025 stating, in pertinent part:

> For 2025, we expect – our full year revenue growth, to be in the range of 10% to 20%. This growth will be almost entirely driven by a greater than three times forecasted increase in our sensors, from approximately 9,000 in 2024, to a range that we're currently forecasting of call it 30,000 to 33,000 this year.

38.    On March 28, 2025, Luminar filed with the SEC its quarterly report on Form 10-K for the period ended December 31, 2024 (the "4Q24 Report") which was signed by Defendants Russell, Fennimore, Gores, Heng, Jepsen, Maguire, Martin, Schiano, Simoncini, and Tempesta.  Attached to the 4Q25 Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Russell and Fennimore attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

39.    The 4Q24 Report neglected to state Defendant Russell had engaged in conduct that would make him the subject of an inquiry by the Audit Committee of the Board of Directors, but stated the following, in pertinent part, regarding Code of Business Conduct and Ethics:

> We have adopted a Code of Business Conduct and Ethics that *applies to all of the members of our board of directors, officers and employees, including our principal executive officer, principal financial officer*, principal accounting officer or controller, or persons performing similar functions.

(emphasis added)

40.    The 4Q24 Report stated the following, in pertinent part regarding Defendant Russell:

> We are highly dependent on Austin Russell, our Founder, President and Chief Executive Officer. Mr. Russell created our first LiDAR product and he remains deeply involved

13

in all aspects of our business, including product development. *The loss of Mr. Russell would adversely affect our business because his loss could make it more difficult to, among other things, compete with other market participants, manage our R&D activities, and retain existing customers or cultivate new ones. Negative public perception of, or negative news related to, Mr. Russell may also adversely affect our brand, relationships with customers, or standing in the industry.*

(emphasis added)

41.    On May 14, 2025, Luminar issued a press release to announce its quarterly business update and financial results for the first quarter of 2025 (the "1Q25 Press Release"). The 1Q25 Press Release included the following projected business milestones to be achieved by the end of 2025, which was a reiteration of the guidance provided in the 4Q24 Press Release:

1.  Series Production: Ramp series production volume at least 3x year-over-year; Drive economies of scale; Launch additional vehicle models.

    o  *On track*. Luminar shipped ~6k LiDARs in Q1'25, up approximately 50% from ~4k in Q4'24, driven entirely by an increase in automotive series production sensor sales. This brings the cumulative production shipments to ~14k.

2.  Next-Generation Technology: Progress on Luminar Halo milestones in OEM development contracts.

    o  *On track*. Luminar is successfully executing development on its Halo LiDAR product and advancing its work against its OEM contracts.

3.  Business Model: Streamline Luminar's operations with customer transitions to a singular technology platform to drive efficient execution, reduced costs, and accelerated path to profitability.

　　　　o  *On track…*

(emphasis added)

42.    In connection with the 1Q25 Press Release, Luminar published a slide

deck that provided graphic presentations of its Business Update (the "1Q25

Presentation"). The 1Q25 Presentation included a slide that reiterated full year 2025

financial guidance stating, in pertinent part:

> Revenue
> Maintained
> FY'25 Total Revenue Growth of 10% to 20%
> • >3x expected increase in LiDAR shipments for series
>   production
> ***
> • Still assumes FY'25 sensor shipments of 30k-33k versus
>   ~9k in FY'24…

43.    On the same day, the Defendants held an investor conference call to

discuss Luminar's latest financial results. On that call, Defendant Fennimore

reiterated that, "[f]or 2025, we continue to expect full year revenue growth in the

range of 10% to 20%."

44.    The statements referenced in paragraphs 35-43 above, made by or

attributed to Defendants, were materially false and/or misleading because they

misrepresented and failed to disclose the following adverse facts pertaining to the

Company's business, operational and financial results, which were known to

Defendants or recklessly disregarded by them. Specifically, Defendants made false

and/or misleading statements and/or failed to disclose that: (1) Defendant Russell

was engaged in undisclosed conduct that would make him the subject of an inquiry by the Audit Committee of the Board of Directors; (2) this conduct created material risk that Defendant Russell would be released from his positions at the Company; (3) Luminar's loss of Defendant Russell as an employee would then create material risk of adversely affecting the Company's business by making it more difficult to, compete with other market participants, manage R&D activities, and retain existing customers or cultivate new ones. Further, negative public perception and negative news related to Defendant Russell could also adversely affect Luminar's brand, relationships with customers, or standing in the industry; (4) accordingly, Luminar had no reasonable basis to provide and/or maintain the Company's financial guidance; and (5) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

### C.   The Truth Emerges

45.    On May 14, 2025, after the market close, and approximately 30 minutes after Luminar issued the 1Q25 Press Release, the Company issued a second press release announcing that Defendant Russell had resigned as President and CEO of the Company and as the Chairman of the Board, "effective immediately, following a Code of Business Conduct and Ethics inquiry by the Audit Committee of the Board of Directors."

46.     Also on May 15, 2025, investment analysts at J.P. Morgan issued a report downgrading Luminar stock from Overweight to Neutral. As rationale, the report stated, in pertinent part:

> We are moving to Neutral from Overweight following the announcement of Founder and CEO, Austin Russell, stepping down effective immediately, following a Code of Business Conduct and Ethics inquiry by the Audit Committee of Luminar's Board of Directors. We believe Austin's leadership in technology and his industry reputation were central to the bull thesis for the company (for us and the investors we engage with), and while the company retains a strong talent bench and a robust product portfolio, including a best-in-class and vertically integrated technology stack, the uncertainty surrounding technology leadership, the conversion of commercial negotiations, and the overall long-term roadmap leads us to adopt a more cautious stance, especially in the context of a choppy auto industry backdrop due to tariff uncertainty.

47.     On this news, Luminar's stock price fell $0.80 per share, or 16.80%, to close at $3.96 per share on May 15, 2025.

48.     On May 21, 2025, analysts at BofA Global Research issued a report announcing termination of coverage of Luminar. As rationale, the report stated, in pertinent part:

> **Final investment opinion**
> We have had an Underperform rating on LAZR given our view that LAZR will need to raise meaningful additional capital. The recent departure of its CEO and founder, Austin Russell, could also adversely impact its ability to innovate.

## VI.    DAMAGES TO THE COMPANY

49.    As a direct and proximate result of the Individual Defendants' conduct, Luminar has been seriously harmed and will continue to be.  Such harm includes, but is not limited to:

a.    Any funds paid to settle the Securities Class Action;

b.    Costs incurred from compensation and benefits paid to the Defendants who have breached their duties to Luminar; and

c.    Loss of market capital due to the wrongdoing alleged herein.

50.    In addition, Luminar's business, goodwill, and reputation with its business partners, regulators, and shareholders have been gravely impaired.  Upon information and belief, the Company still has not fully admitted the nature of its false statements and the true condition of its business.  The credibility and motives of management are now in serious doubt.

51.    The actions complained of herein have irreparably damaged Luminar's corporate image and goodwill.  For at least the foreseeable future, Luminar will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that Luminar's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## VII.  DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

52.    Plaintiff brings this action derivatively in the right and for the benefit of Luminar to redress injuries suffered, and to be suffered, by Luminar as a direct result of the wrongdoing alleged herein.  Luminar is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

53.    Plaintiff will adequately and fairly represent the interests of Luminar in enforcing and prosecuting its rights.

54.    Plaintiff has continuously been a shareholder of Luminar at times relevant to the wrongdoing complained of and is a current Luminar shareholder.

55.    When this action was filed, Luminar's Board of Directors consisted of the Director Defendants, as well as non-party Paul Ricci ("Ricci").  Plaintiff did not make any demand on the Board to institute this action because such a demand would be a futile, wasteful, and useless act, as set forth below.

56.    Defendants Russell and Fennimore could not disinterestedly and independently consider a demand for action.  Defendants Russell and Fennimore are employees of the Company.  Moreover, they are the primary issuers of the misleading statements alleged above that are the subject of the Securities Class Action. For these reasons, Defendants Russell and Fennimore face a substantial likelihood of liability and also are not disinterested of the Company's defense(s) in

the securities class action.    As a result, demand as to Defendants Russell and Fennimore are futile.

57.    Demand is additionally excused as to Defendants Russell, Fennimore, Gores, Jepsen, Maguire, Martin, Schiano, Simoncini, Tempesta, and Heng because they personally signed the misleading Forms 10-K and therefore personally issued the misleading disclosures that are subjecting the Company to liability in the Securities Class Action, and that perpetuated the scheme alleged herein.  Defendants Russell and Fennimore could not disinterestedly and independently consider a demand to investigate their own mind state the misleading statements issued personally by them.

58.    During the wrongdoing alleged herein, the Board's Audit Committee was comprised of the Audit Committee Defendant.  These four Audit Committee Defendants could not disinterestedly and independently consider a demand for action in connection with the allegations herein for at least the reason that they knew of the misleading nature of the Company's statements and their omission of the Audit Committees investigation of Russell and his departure and breached their fiduciary duties by knowingly failing correct these omissions and statements. Demand is therefore excused as to them on this basis as well.

## COUNT I

**(Against the Individual Defendants for Breach of Fiduciary Duty)**

59.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

60.    The Individual Defendants each owe and owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Luminar's business and affairs, particularly with respect to issues as fundamental as public disclosures.

61.    The conduct by the Individual Defendants set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Luminar.

62.    In breach of their fiduciary duties owed to Luminar, the Individual Defendants willfully participated in and caused the Company to expend unnecessarily its corporate funds, rendering them personally liable to the Company for breaching their fiduciary duties.

63.    In particular, the Individual Defendants knowingly or recklessly made untrue statements and/or permitted the Company's public filings, disclosures, and statements to misleadingly report the Company's overall prospects.

64.     The Audit Committee Defendants further breached their fiduciary duty of loyalty and good faith by approving the statements described herein which were made during their tenure on the Audit Committee, which they knew or were reckless in not knowing contained improper statements and omissions. The Audit Committee Defendants completely and utterly failed in their duty of oversight and failed in their duty to appropriately review financial results, as required by the Audit Committee Charter in effect at the time.

65.     As a direct and proximate result of the breaches of their fiduciary obligations by the Individual Defendants, Luminar has sustained and continues to sustain significant damages, including direct monetary damages, exposure to liability from securities litigation and a loss of goodwill in the capital markets. As a result of the misconduct alleged herein, Defendants are liable to the Company.

## COUNT II

### (Against the Individual Defendants for Aiding and Abetting Breach of Fiduciary Duty)

66.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

67.     By encouraging and accomplishing the illegal and improper transactions alleged herein and concealing them from the public, the Individual Defendants have each encouraged, facilitated, and advanced their breaches of their fiduciary duties. In so doing, the Individual Defendants have each aided and abetted,

conspired, and schemed with one another to breach their fiduciary duties, waste the Company's corporate assets, and engage in the ultra vires and illegal conduct complained of herein.

## COUNT III

### (Against the Individual Defendants for Waste)

68.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

69.    As a result of the misconduct described above, the Individual Defendants have wasted corporate assets by forcing the Company to expend valuable resources in defending itself in the ongoing litigation and investigations detailed herein, in addition to any ensuing costs from a potential settlement or adverse judgment or any penalties, fines, or other monetary penalties imposed related thereto.

70.    Further, as a result of the failure to allow the Company to implement adequate internal and financial controls, the Individual Defendants have caused Luminar to waste its assets by paying improper compensation and bonuses to certain of its executive officers and directors that breached their fiduciary duties.

71.    As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

72.    Plaintiff, on behalf of Luminar, has no adequate remedy at law.

## COUNT IV

**(Against the Individual Defendants for Unjust Enrichment)**

73.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

74.    By their wrongful acts, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Luminar.  The Individual Defendants were unjustly enriched as a result of the hundreds of thousands or millions of dollars' worth in compensation paid to them without basis and while they were breaching fiduciary duties owed to Luminar.

75.    Plaintiff, as a stockholder and representative of Luminar, seeks restitution from the Individual Defendants and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by the Individual Defendants from their wrongful conduct and fiduciary breaches.

76.    Plaintiff, on behalf of Luminar, has no adequate remedy at law.

## COUNT V

**(Against Defendants Russell and Fennimore for
Contribution Under Sections 10(b) and 21D of the Exchange Act)**

77.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

78.    Luminar and Defendants Russell and Fennimore are named as defendants in the Securities Class Action, which asserts claims under federal

securities laws for violations of Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder by the SEC. If and when the Company is found liable in the Securities Class Action for these violations of the federal securities laws, the Company's liability will be in whole, or in part, due to Defendants Russell's and Fennimore's willful and/or reckless violations of their obligations as officers and/or directors of Luminar.

79.    Defendants Russell and Fennimore, because of their positions of control and authority as officers and/or directors of Luminar, were able to, and did, directly and/or indirectly, exercise control over the business and corporate affairs of Luminar, including the wrongful acts complained of herein and in the Securities Class Action.

80.    Accordingly, Defendants Russell and Fennimore are liable under 15 U.S.C. § 78j(b), which creates a private right of action for contribution, and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of a private right of action for contribution arising out of violations of the Exchange Act.

81.    As such, Luminar is entitled to receive all appropriate contribution or indemnification from Defendants Russell and Fennimore.

82.    Plaintiff, on behalf of Luminar, has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of Luminar, demands judgement as follows:

A.     Declaring that Plaintiff may maintain this action on behalf of Luminar and that Plaintiff is an adequate representative of the Company;

B.     Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Defendants' breaches of fiduciary duties, waste of corporate assets, unjust enrichment, and fraud;

C.     Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Luminar;

D.     Directing Luminar to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Luminar and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's Bylaws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote of the following corporate governance policies:

i.     a proposal to strengthen the Company's controls over accounting and financial reporting;

ii.     a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

iii.   a proposal to strengthen Luminar's oversight of its disclosure procedures;

iv.   a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

v.   a proposal to strengthen Luminar's disclosure controls to ensure material information is adequately and timely disclosed to the SEC and the public;

vi.   a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

vii.   a provision to permit the stockholders of Luminar to nominate at least three candidates for election to the Board;

viii.   a proposal to appoint additional independent board members with established reputations and substantial experience in governance, risk, and compliance issues; a proposal to enhance and/or augment the audit, risk and compliance committees of the Board to oversee internal controls and compliance processes;

ix.   a proposal to create the role(s) of Chief Compliance, Chief Risk Officer and/or Chief Legal Officer and to assure that the Chief Compliance, Chief Risk Officer and/or Chief Legal Officer and other company leadership have (a) necessary subject matter and regulatory expertise; (b) direct reporting authority to the Board; and (c) adequate autonomy and resources to carry out their responsibilities; and

x.   a proposal to review and implement revised codes of conduct, policies and procedures, training, integrity hotlines, auditing and monitoring processes and procedures.

E.   Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of Defendants' trading activities or their other assets so as to assure that Plaintiff on behalf of Luminar has an effective remedy;

27

F.    Awarding Luminar restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the Defendants;

G.    Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

H.    Granting such other and further relief as the Court deems just and proper.

## <u>JURY DEMAND</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

DATED: September 3, 2025

**COOK LAW, P.A.**

By:    */s/ William J. Cook*

William J. Cook
Fla. Bar No. 0986194
610 East Zack Street, Suite 505
Tampa, FL 33602
(813)-489-1001
wcook@cooklawfla.com

**Of Counsel:**

**HERMAN JONES LLP**
John C. Herman (*pro hac vice* to be sought)
Candace N. Smith (*pro hac vice* to be sought)
Carlton R. Jones (*pro hac vice* to be sought)
3424 Peachtree Road, N.E., Suite 1650
Atlanta, Georgia 30326
Telephone: (404) 504-6500
Facsimile: (404) 504-6501
jherman@hermanjones.com
csmith@hermanjones.com
cjones@hermanjones.com

*Counsel for Plaintiff Chibale Bandele*